UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |
|---|---|
| SURETY ADMINISTRATORS, INC.,<br>645 Penn Street<br>Reading, PA 19603,<br>and<br>HARCO NATIONAL INSURANCE COMPANY,<br>702 Oberlin Road<br>Raleigh, NC 27606,<br>and<br>CAPITAL BONDING CORPORATION,<br>525 Penn Street<br>Reading, PA 19601,<br><br>          Plaintiffs,<br>     v.<br><br>MOHAMMED H. SAMARA,<br>799 Main Street<br>Patterson, NJ 07503,<br><br>          Defendant. | JURY TRIAL DEMANDED<br><br><br><br><br><br>Civil Action No. |

## COMPLAINT

Plaintiffs Harco National Insurance Company, Capital Bonding Corporation and Surety Administrators, Inc., by and through their undersigned counsel, state the following as their complaint against Defendant Mohammed H. Samara:

### Introduction

1.      This is an action based on Defendant's violations of a Bail Bond Subagency Agreement by failing to remit payment of all current and future agent service charges and premiums on bail bonds issued in civil and criminal actions, and unaccounted for, lost or mislaid powers of attorney, by Defendant as a subagent of Plaintiff Capital Bonding Corporation, which had been designated by Plaintiff Harco National Insurance Company as its supervising agent to appoint and supervise subagents such as Defendant to solicit and write such bail bonds.

**Parties**

2.	Plaintiff Harco National Insurance Company ("Harco") is a corporation organized under the laws of the State of Illinois and has a principal place of business in Rolling Meadows, Illinois.

3.	Plaintiff Capital Bonding Corporation ("CBC") is a corporation organized under the laws of the Commonwealth of Pennsylvania and has a principal place of business in Reading, Pennsylvania.

4.	Plaintiff Surety Administrators, Inc. ("SA") is a corporation organized under the laws of the Commonwealth of Pennsylvania and has a principal place of business in Reading, Pennsylvania.

5.	Defendant Mohammed H. Samara ("Samara") is an adult individual who resides in Patterson, New Jersey.

**Jurisdiction and Venue**

6.	The amount in controversy in this matter exceeds $75,000.

7.	This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332.

8.	Venue is appropriate in this Court pursuant to 28 U.S.C. § 1391, because a substantial part of the events giving rise to the claims occurred in this district.

**Factual Allegations**

9.	Harco is a casualty insurance company that, at all times relevant hereto, was engaged, *inter alia*, in the business of serving as surety on bail and immigration bonds.

10.	CBC is a company that, at all times relevant hereto, had been designated by Harco to become a surety agent on bail bonds in civil and criminal actions and to appoint and supervise subagents in, *inter alia*, designated areas in the State of New Jersey and elsewhere in the United States.

11. SA is a company that, on behalf of Harco, has obtained the rights to collect certain debt to CBC by sub-agents such as Samara who had become executing agents of CBC and Harco for the writing of bail bonds, which debt is now owed to Harco pursuant to certain security interest agreements between Harco and CBC.

12. On January 1, 2003, Harco entered into a Program Administrator Agreement ("PAA") with CBC regarding a bail bond and immigration bond program administered by CBC.

13. Pursuant to the PAA, CBC was responsible for the marketing, underwriting and issuance of bail and immigration bonds for Harco in numerous states across the country. CBC was responsible for, *inter alia*, soliciting applications for federal and state criminal court bail bonds and Immigration and Naturalization Services surety bonds. CBC's duties under the PAA included, *inter alia*, charging and collecting agent service charges and premium payments for such bonds and remitting those payments to Harco. CBC was also responsible under the PAA for, *inter alia*, record maintenance, risk mitigation and claims management. In addition, pursuant to the PAA, the selection and practices of any CBC sub-agents with respect to the PAA were subject to Harco's approval.

14. On September 9, 1998, CBC entered into a Bail Bond Subagency Agreement with Samara.

15. Pursuant to the Bail Bond Subagency Agreement ("Agreement"), CBC appointed Samara as a nonexclusive subagent to Harco designated by CBC in and for the soliciting and writing of retail joint venture bail bonds in those counties specified in the Agreement.

16. Pursuant to the Agreement, Samara agreed to, *inter alia*, solicit and write bail bond business; collect and promptly transmit to CBC all agent service charges and premiums and collateral according to such routines prescribed by Harco and CBC; and assure that persons bonded appear in Court when required.

17. Pursuant to the Agreement, Samara is required to keep complete records, in such form as Harco and CBC may indicate, of all bond business written by Samara for Harco, and all such records must be available at all times to Harco and CBC.

18. Pursuant to the Agreement, and the insurance laws of Pennsylvania and New Jersey, all agent service charges and premiums collected by Samara are deemed trust funds that shall not be commingled with other funds, and shall be turned over immediately to CBC for Harco according to such routine as Harco and CBC may prescribe.

19. Pursuant to the Agreement, as directed by CBC and Harco, Samara was required to transmit to CBC in such form and according to such routine as Harco and CBC from time to time prescribed, reports on all bond business written by or through Samara showing, *inter alia*, the principals' names and addresses, the same information regarding guarantors and sureties, the risks assumed, agent service charges and premiums collected, collateral received, perfected and returned, forfeitures incurred, claims paid, bonds discharged and any and all other information that Harco and CBC may from time to time request. Samara was also required to promptly file as required with Harco and CBC copies of any documents executed by him on behalf of Harco.

20. Pursuant to the Agreement, Harco regularly supplied Samara with a limited number of form documents which are referred to in the Agreement as "powers of attorney." Each of these "powers of attorney" was endorsed for a certain maximum amount, and Samara was authorized to issue and post these documents as needed for purposes of writing bail bonds. Under the Agreement, should any power of attorney be unaccounted for, lost or mislaid, such power of attorney is considered issued and posted for the maximum amount endorsed thereon; Samara must immediately report to CBC and Harco a list of such powers of attorney and pay therewith the full agent service charges and premiums and reserve (less applicable commission)

which would be due if such power of attorney had actually been issued or posted for the maximum account endorsed thereon.

21. Pursuant to the Agreement, Samara was to pay CBC's fees, which were to be calculated retroactively for each month so long as Samara wrote bonds for Harco or through CBC, bond costs in the amount of three percent (3%) of the face amount of the penal liability of the bonds written by or through Samara, plus fifty percent (50%) of the net revenues from agent service charges and premiums after payment of all bond costs. Further, such fees were due and payable weekly along with reports required pursuant to the Agreement.

22. On August 24, 2004, Harco wrote Samara to advise him that SA had obtained the rights to his debt to CBC and demanding remittance of all current and future payments on their account. The balance of the agent service charges and premium then due and owing was $909,548.72, and the unaccounted for powers of attorney with agent service charges and premium due and owing was $1,410,200.00.

23. The September 8, 2004 correspondence from Harco to Samara enclosed another September 8, 2004 letter from the Acting President of CBC demanding immediate remittance of all current and future payments on their account.

24. In direct violation of the Agreement, Samara failed to remit all payments due and owing on his account to CBC and Harco.

## FIRST CLAIM FOR RELIEF
### Breach of Contract

25. Plaintiffs reassert the allegations contained in paragraphs 1 through 24 as if fully set forth herein.

26. Defendant's conduct, as described above and by such other ways as may be proved by the evidence, constitutes a breach of the Agreement. Defendant breached the Agreement in the following ways:

  a. intentionally misrepresenting the amount and number of bonds posted on behalf of Harco and CBC;

  b. intentionally failing to pay all agent service charges and premiums owed to Harco and CBC under the Agreement; and

  c. by such other ways as may be proved by the evidence.

27. As a direct and proximate result of Defendant's breach of contract, Plaintiffs have been damaged in an amount not less than $909,548.72.

## SECOND CLAIM FOR RELIEF
### Breach of Contract

28. Plaintiffs reassert the allegations contained in paragraphs 1 through 27 as if fully set forth herein.

29. Defendant's conduct, as described above and by such other ways as may be proved by the evidence, constitutes a breach of the Agreement. Defendant breached the Agreement in the following ways:

  a. intentionally misrepresenting the amount and number of powers of attorney issued and posted on behalf of Harco and CBC;

  b. intentionally failing to pay Harco and CBC for unaccounted for, lost or mislaid powers of attorney as mandated by the Agreement; and

  c. by such other ways as may be proved by the evidence.

30. As a direct and proximate result of Defendant's breach of contract, Plaintiffs have been damaged in an amount not less than $1,410,200.00.

## THIRD CLAIM FOR RELIEF
### Breach of Fiduciary Duty

31.   Plaintiffs reassert the allegations contained in paragraphs 1 through 30 as if fully set forth herein.

32.   Pursuant to the Agreement, Defendant was a fiduciary of Harco and CBC.

33.   Pursuant to the Agreement, Defendant owed duties of good faith, loyalty and due care to Harco and CBC.

34.   Each of Defendant's fiduciary duties imposed a concurrent obligation to take reasonable steps to preserve Harco's and CBC's assets and to promote their financial security.

35.   Defendant breached his fiduciary duties to Harco and CBC by, *inter alia*:

   a.   intentionally misrepresenting the amount and number of bonds posted on behalf of Harco and CBC;

   b.   intentionally failing to pay all agent service charges and premiums owed to Harco and CBC under the Agreement;

   c.   intentionally misrepresenting the amount and number of powers of attorney issued and posted on behalf of Harco and CBC;

   d.   intentionally failing to pay Harco and CBC for unaccounted for, lost or mislaid powers of attorney as mandated by the Agreement; and

   e.   by such other ways as may be proved by the evidence.

36.   Defendant's breaches of fiduciary duties constitute constructive fraud.

37.   As a result of his breaches of fiduciary duties, Defendant has been unjustly enriched.

38.   As a direct and proximate result of Defendant's breaches of fiduciary duties, Plaintiffs have been damaged in an amount not less than $2,319,748.72.

**FOURTH CLAIM FOR RELIEF**
Conversion of Trust Funds

39. Plaintiffs reassert the allegations contained in paragraphs 1 through 38 as if fully set forth herein.

40. Pursuant to the Agreement, and the insurance laws of Pennsylvania and New Jersey, all agent service charges and premiums collected by Defendant are deemed trust funds which are the property of Harco, not to be commingled with other funds, but to be turned over immediately to CBC for Harco.

41. Defendant deprived Harco and CBC of their respective property rights in these trust funds, and deprived Harco and CBC of their rights of use and possession of these trust funds by wrongfully failing to turn over these trust funds pursuant to the Agreement and state law.

42. Defendant unreasonably interfered with Harco's and CBC's respective property rights in these trust funds, and unreasonably interfered with Harco's and CBC's respective rights of use and possession of these trust funds by wrongfully failing to turn over these trust funds pursuant to the Agreement and state law.

43. Neither Harco nor CBC consented to Defendant's failure to turn over the trust funds.

44. Defendant has no lawful justification for his failure to turn over the trust funds.

45. As a direct and proximate result of Defendant's wrongful conversion by failure to turn over the trust funds, Plaintiffs have been damaged in an amount not less than $2,319,748.72.

**FIFTH CLAIM FOR RELIEF**
Unjust Enrichment

46. Plaintiffs reassert the allegations contained in paragraphs 1 through 45 as if fully set forth herein.

47. Harco conferred a benefit on Defendant in the form of its funds which were to be held in trust by Defendant and turned over to CBC for Harco.

48. Defendant appreciated the benefit by using these funds for various purposes that did not include turning the funds over to CBC for Harco as agreed and as mandated by law, and inequitably retained the benefit without repayment to Plaintiffs.

49. Defendant improperly and unjustly enriched himself in excess of $909,548.72 based upon Defendant's wrongful conversion of agent service charges and premiums which were to be held in trust for Harco and CBC under the Agreement and according to law.

50. As a direct and proximate result of Defendant's unjustly enriching himself by failing to turn over Harco's and CBC's agent service charges and premiums, Plaintiffs have been damaged in an amount not less than $2,319,748.72.

WHEREFORE, Plaintiffs respectfully pray the Court as follows:

a. That Plaintiffs have and recover compensatory damages from Defendant in an amount greater than $75,000;

b. That Plaintiffs have and recover punitive damages from Defendant;

c. That the Court enter an Order commanding Defendant, and all those acting in concert with him, to immediately turn over to Plaintiffs all blank bond inventory forms and powers of attorney;

d. That Plaintiffs have and recover reasonable attorneys' fees;

e. That the costs of this action be taxed to Defendant; and

f. For such other and further relief as the Court may deem just and proper.

9

|  |  |
|---|---|
|  | Respectfully submitted, |
| OF COUNSEL: |  |
|  | /s/ Henry F. Siedzikowski |
| ELLIOTT, GREENLEAF | HENRY F. SIEDZIKOWSKI |
|   & SIEDZIKOWSKI, P.C. | ERIC J. BRONSTEIN |
|  | TODD N. BARNES |
|  | Union Meeting Corporate Center V |
|  | 925 Harvest Drive |
|  | Blue Bell, PA  19422 |
|  | (215) 977-1000 |
|  |  |
|  | Counsel for Plaintiffs |

DATED: